7. At all times mentioned herein, Plaintiff was employed at Defendant Company's Windsor Locks location.

8. Defendant employs more than fifteen (15) employees.

**FACTS:**

9. Ms. Rodriguez began her employment with Defendant Company in August of 2005 as a Sales Associate and remained in that position continuously until the wrongful termination of her employment on May 16, 2014.

10. Plaintiff had favorable performance with Defendant, evidenced by positive yearly employment evaluation, positive oral feedback and periodic increases in pay.

11. Beginning in approximately 2009, Shane Burnell was Plaintiff's Supervisor and a Level 2 Manager.

12. Mr. Burnell is a Caucasian male.

13. Mr. Burnell, and other Supervisors or Managers in Defendant's Windsor Locks location, would spend much of their time in the Managers Office/Operations Room.

14. From the beginning of Plaintiff's employment with Defendant until the Summer of 2013, Plaintiff performed all of the essentials functions of her job without issue.

15. During the Summer of 2013, Plaintiff's 20 year old daughter retained Summer employment near Defendant's Windsor Locks location and would periodically visit Defendant's Windsor Locks location during Plaintiff's working hours.

16. Following one of those visits, wherein Mr. Burnell was present, Mr. Burnell began making derogatory comments regarding Plaintiff's daughter and her appearance, including but not limited to the following:

    a. "Wow! Your daughters pretty;"
    b. "Does your daughter like white boys;"
    c. "Do you think she would get with me;"

2

    d. "Your daughter can come live with me;"
    e. "You think I could get that;"
    f. "What's up with your daughter?"

17. The foregoing comments were stated in front of other employees of Defendant Company.

18. Thereafter, Mr. Burnell began making derogatory comments about Plaintiff's daughter on a constant, everyday basis, including "I'll be hitting that every night," and "You would love me as a son in law."

19. Each and every time Mr. Burnell made these comments, Plaintiff asked him to stop.

20. During the Fall of 2013, Mr. Burnell began redirecting his comments to Plaintiff.

21. Beginning in the Fall of 2013, when Plaintiff would enter the Managers Office/Operations Room at Respondent's Windsor Locks location to fill out paperwork or collect paystubs, Mr. Burnell would point to his shoulders and neck and state, "Come and get this," requesting that Plaintiff give him a massage.

22. In addition, upon entering the Managers Office/Operations Room at Defendant's Windsor Locks location, Mr. Burnell would place work papers on his lap and state, "Come and get this," gesturing towards his genitals.

23. Each and every time Mr. Burnell made such requests Plaintiff refused his advances and left the office.

24. In the Winter of 2013, Mr. Burnell's sexually charged and discriminatory behavior escalated.

25. On one occasion during the Winter of 2013, Mr. Burnell was walking past Plaintiff as she was working and touched her buttocks.

3

26. Shortly thereafter, Mr. Burnell made a comment of a sexual nature and Plaintiff stated, "One day I am going to report you to Rachel," referring to Rachel Ferrer, Human Resources for Defendant Company.

27. The derogatory and sexually charged comments continued on a constant, daily basis including Mr. Burnell requesting foot massages and stating, "That's what she said" whenever Plaintiff would state that a rental car was either too big or too small for the purchasing customer.

28. On Friday, November 29, 2013, the day after the Thanksgiving holiday, Plaintiff's sister, Carmen Rodriquez and Plaintiff, appeared at Defendant Company to rent a car.

29. On said date, Plaintiff had a cold sore on her lip.

30. On said date, Mr. Burnell was assisting Plaintiff's sister and Plaintiff with their rental when he realized the cold sore on Plaintiff's lip.

31. In response he stated, "You need to stop sucking Bumper's dick! That's what that is," referring to Plaintiff's cold sore and her boyfriend James "Bumper" Parks.

32. During the next so many weeks, the cold sore would come and go to which Mr. Burnell would reply, "Oh it looks like you've been sucking dick again," or "It wasn't me cause I don't have herpes."

33. On each occasion that Mr. Burnell would make said comments, Plaintiff would either express her disgust or simply walk away.

34. On or around February 9, 2014, Plaintiff arrived at work around 6:00 a.m. and went into the Managers Office/Operations Room to collect paperwork.

35. Mr. Burnell was present when Plaintiff arrived and stated, "Do you want to get right there," pointing to his neck and requesting a massage.

4